UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| FIRST CAPITAL BANK OF KENTUCKY, | ) | |
| Appellant, | ) | NA 11-090753-BHL-7A |
| | ) | BANKRUPTCY COURT CASE NO. |
| vs. | ) | |
| | ) | |
| ROBERT JAMES BLOK, JR. and RAE | ) | NA 4:11-cv-128-RLY-WGH |
| JEANNA GODSEY, | ) | DISTRICT COURT CAUSE NO |
| Appellees. | ) | |

**APPEAL FROM THE UNITED STATES BANKRUPTCY COURT**

This is an appeal from a final order entered on September 15, 2011, by the Honorable Basil H. Lorch, III, from the United States Bankruptcy Court for the Southern District of Indiana, denying the Appellant's Motion to Dismiss the Appellees' Chapter 7 case. For the reasons explained below, the court **AFFIRMS** the decision of the bankruptcy court.

**I.      Background**

Appellees, Robert James Blok, Jr. ("Dr. Blok") and Rae Jeanna Godsey ("Dr. Godsey") (collectively "Debtors"), a married couple, are physicians from Charlestown, Indiana. Following the demise of their respective medical practices in 2008 and the continuing financial struggles with their limited liability company, Charlestown Medical Properties, LLC ("Charlestown Medical"), Dr. Blok and Dr. Godsey filed their joint Bankruptcy Petition under Chapter 7 on March 21, 2011. On June 11, 2011, Appellant,

1

The First Capital Bank of Kentucky ("First Capital"), one of the Debtors' creditors, filed a Motion to Dismiss their Chapter 7 bankruptcy for cause pursuant to 11 U.S.C. § 707(a), alleging that the Debtors have the ability to pay their debts and thus, filed for bankruptcy in bad faith. After the issues were fully briefed, the court held an evidentiary hearing wherein the Debtors testified and documentary evidence related to the bankruptcy filing was admitted by stipulation of the parties. On September 15, 2011, the bankruptcy court issued an Order denying First Capital's Motion to Dismiss. This appeal followed.

## II.     Jurisdiction

A bankruptcy court's order denying a motion to dismiss a Chapter 7 bankruptcy proceeding under 11 U.S.C. § 707 is considered final and appealable if it resolves all contested issues on the merits and leaves only the distribution of estate assets to be completed. *See In re Ross-Tousey*, 549 F.3d 1148, 1152-53 (7th Cir. 2008). The bankruptcy court's Order dated September 15, 2011, resolved all contested issues on the merits, leaving only the ministerial act of distributing assets to be completed. *Id*. at 1153 (holding that the bankruptcy court's "denial of the motion to dismiss was appropriate for appeal to the district court" because the only remaining action to be taken was the "ministerial act" of distributing assets). Accordingly, this court has subject matter jurisdiction over the present appeal pursuant to 28 U.S.C. § 158(a).

## III.    Statement of Facts

### A.     Debtors' Employment and Business Debt

Dr. Godsey formed Rae J. Godsey, D.O., P.S.C. ("Godsey, P.S.C."), as the

operating entity for her private medical practice in June 2003. Two years later, in August 2005, Dr. Blok organized Southern Indiana Orthopedic & Spine Surgery, P.S.C. ("SIOSS") as the operating entity for his own private medical practice. In 2005, the Debtors also formed Charlestown Medical, which owned the property where the two practices operated. Debtors are the only two shareholders/members of Godsey, P.S.C., SIOSS, and Charlestown Medical.

On January 15, 2008, Charlestown Medical executed a promissory note in favor of First Capital in the face principal amount of $850,000. That same day, SIOSS executed a promissory note in favor of First Capital in the principal amount of $60,000. Debtors were each required to execute Commercial Guarantys in connection with these business loans.

Both Dr. Blok's and Dr. Godsey's private medical practices suffered financially, and by the Spring of 2008, SIOSS ceased operations. Part of the reason SIOSS failed is because Dr. Blok's Army Reserve unit was activated and deployed 21 days after the practice opened its doors, resulting in Dr. Blok's absence from his medical practice for almost a year. Godsey, P.S.C. ceased operations soon thereafter. Dr. Blok testified that when the businesses went under, First Capital held them personally responsible for the debt. In addition, Dr. Blok's and Dr. Godsey's practices also had lines of credit with Your Community Bank, a debt that was also converted into a personal debt at that time. Despite receiving advice from their accountant to immediately file for bankruptcy, Dr. Blok and Dr. Godsey resisted that option.

Dr. Blok and Dr. Godsey secured employment at Clark Memorial Hospital in 2008. Dr. Godsey left Clark Memorial the following year to take a position with Humana in Louisville, Kentucky. Their joint income was $728,935 in 2009 and $742,329 in 2010. At the evidentiary hearing, Dr. Blok testified that his current base salary as an orthopedic surgeon with Clark Physician Group is $550,000 per year, and Dr. Godsey testified that her current base salary at Humana as a Medical Director is $170,000 per year, bringing their total combined base income to $720,000 a year.

Despite Dr. Blok's substantial income, his future income is not expected to remain at current levels. Dr. Blok testified that in 2007, he was diagnosed with a heart condition known as myocardial bridging, which causes him severe chest pain, particularly in stressful situations. Consequently, the condition has negatively affected his future earning capacity. For example, Dr. Blok no longer performs invasive surgical procedures, such as total joint and knee replacements, and restricts his practice to minimally invasive procedures. The condition also caused him to receive a medical discharge from the military (formal discharge pending), ruling out the opportunity to earn extra income as a military physician.

**B.     Assets**

In March 2008, in advance of the Debtor's Chapter 7 filing, Anderson Appraisal Associates, LLC, appraised their personal property as having a fair market value of $67,125. Debtors also own four vehicles, all of which were purchased in either 1999 or 2002. Their primary automobiles, a 2002 Ford Excursion and a 1999 Ford Expedition,

each have over 200,000 miles on them. In addition, they have a mortgage expense of almost $4,000 a month. Their 28-acre property houses a barn and a cabin, both of which are over 200 years old and in need of repairs.

    **C.**    **Debts and Other Expenses**

Although Charlestown Medical continues to operate, its only lessee is a local YMCA. The rent they collect from the YMCA ($4,310 a month) does not cover the mortgage payment to First Capital. Dr. Godsey testified that she and Dr. Blok hired a realtor, but were unable to sell or rent out the entire office space. They sought refinancing of the office space, but were declined by banks due to their debt-to-income ratio.

In addition, Dr. Blok and Dr. Godsey provide support to two children who are attending college. Further, their minor child was diagnosed with learning disabilities in 2009, resulting in severe delays in reading, writing and math. They searched for an appropriate school to address his delays, and settled on the Summit Academy in Middletown, Kentucky, located a considerable distance from their home and for which they pay out-of-state tuition. According to their Amended Schedule J, their monthly expenses exceed their monthly income by approximately $810.83.

    **D.**    **Payments to Trustee**

Since the filing of their Chapter 7 case, the Debtors paid $72,156.18 to the Trustee. This amount consisted of a Kentucky tax refund, a net federal tax refund, funds from their checking and saving accounts, and the sale of certain personal property.

### E. First Capital's Claim Against the Debtors

First Capital originally filed a claim in the amount of $869,811.04. The claim is secured by Charlestown Medical, LLC, an entity also in bankruptcy. *See In re Charlestown Medical Properties, LLC*, Case. No. 11-90965-BHL-7 (Bankr. S.D. Ind.). The real property has been appraised at $650,000 and has been abandoned by the Trustee. Subsequent to this appeal, First Capital amended its claim to an unsecured claim for $230,071.98.

The Debtors paid First Capital approximately $229,921.58 on the subject loans after their medical practices failed, from April 2008 into 2010.

## IV. Standard of Review

The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). The decision whether to grant a motion to dismiss in a Chapter 7 case lies within the discretion of the bankruptcy court, and will be reversed only for an abuse of that discretion. *Id.* "[A] court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains to evidence on which the court rationally could have relied." *Id.* (quoting *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004)).

## V. Discussion

The sole issue on appeal is whether the bankruptcy court erred in denying First Capital's Motion to Dismiss this action for cause under 11 U.S.C. § 707(a). Pursuant to

11 U.S.C. § 707(a), the court may dismiss a case under Chapter 7 for "cause," including: (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees or charges required under chapter 123 of title 28; and (3) failure of the debtor in a voluntary case to file the information required by paragraph (1) of section 521. The Seventh Circuit has not addressed the meaning of "cause" in the Chapter 7 context; however, in 2005, this court held that the enumerated examples listed above were not exhaustive, and that the provision for "cause" includes filing a petition in bad faith. *See United States Trustee v. Pedigo*, 329 B.R. 47, 50 (S.D. Ind. 2005); *accord In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) (citing *In re Zick*, 931 F.2d 1124 (6th Cir. 1991)); *In re Piazza*, 451 B.R. 608, 614 (S.D. Fla. 2011); *In re Rahim*, 449 B.R. 527, 531 (E.D. Mich. 2011). In this regard, the Sixth Circuit observed:

> Dismissal based on lack of good faith . . . should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence.

*In re Zick*, 931 F.2d at 1129; *see also In re Tamecki*, 229 F.3d at 207 (citing *Zick* for the same proposition). Factors the court may consider include whether: (1) the filing seems intended to dispose of only one or two creditors; (2) the debtor filed in response to a judgment, to pending litigation, or to collection action; (3) the debtor made no effort to repay debts; (4) the debtor manipulated information on the schedules to obtain a particular result; (5) the debtor failed to make lifestyle adjustments to repay creditors; and (6) the debtor had sufficient resources to pay some or all of the debts. *In re Pedigo*, 296

7

B.R. 485, 488 n.2 (Bankr. S.D. Ind. 2003) (collecting cases), *rev'd on other grounds*, 329 B.R. 47 (S.D. Ind. 2005).

The Debtors' Statement of Financial Affairs reflects that they paid off the majority of their creditors (over 30) in the 90 days prior to filing bankruptcy, leaving approximately eight creditors on the schedules, including First Capital. At the evidentiary hearing, First Capital made reference to the fact that the Debtors paid only $222 in payments to First Capital on the business loans in that same 90-day period. First Capital neglects to inform the court, however, that prior to filing for bankruptcy, the Debtors paid First Capital well over $200,000 from the time their practices failed, April 2008, into calendar year 2010. The fact that the Debtors paid off some creditors, with balances far less than owed to First Capital, is not evidence of an intention to avoid a large single debt. To the contrary, this evidence reflects only that they paid off as many creditors as they could prior to filing bankruptcy.

It is important to note that the Debtors' largest source of debt is business debt that they personally guaranteed. Although the Debtors' accountant recommended that they file bankruptcy in 2008, the Debtors resisted that option, thinking that their income was sufficient to cover both their personal and business-related debt. They also sought out a lessee for Charlestown Medical, the YMCA, to help pay the mortgage on that property. The rent they were able to negotiate with the YMCA is less than their mortgage payment. The Debtors have attempted, through a realtor, to lease out the balance of the Charlestown Medical business space and/or sell the property, but have been unable to do

so. The evidence reflects that the Debtors have made an honest and good faith attempt to pay their debts.

First Capital attempts to liken the Debtors as the type of people who refuse to make lifestyle adjustments to pay their creditors. The evidence does not support this view. While they own a large property, their house is approximately 50 years old, and the barn and cabin on the property are over 200 years old and in need of constant repair. An appraisal from March 2008 indicates a fair market value of $67,125 for all of their personal property, including their four cars. Their two primary vehicles, as noted previously, have over 200,000 miles on them. This is not the type of egregious case in which the Debtors are "attempting to preserve their comfortable standard of living at the expense of their creditors." *See In re Rahim*, 449 B.R. at 534; *see also id.* at 532 (citing *In re Zick*, 931 F.2d at 1129). Instead, this is a case in which unforeseen circumstances – Dr. Blok's military deployment soon after his practice opened, Dr. Blok's heart condition which has changed the way he practices medicine and negatively affects his future earning capacity, the loss of Dr. Blok's and Dr. Godsey's private practices, and the cost of tuition for their minor son's special education at the Summit Academy – coupled with a weak economy, created an untenable situation for the Debtors. In fact, at the hearing, Dr. Blok testified that both his house and the commercial property (Charlestown Medical) is appraised for less than what he and Dr. Godsey owe First Capital.

The court is left with only one salient fact – the Debtors have, in the words of First Capital, a "massive income." First Capital complains that the bankruptcy court unduly

9

minimized that fact. As the bankruptcy court correctly observed, the Debtors' income, standing alone, is not sufficient to find cause to dismiss this case for bad faith. "Otherwise, dismissal would essentially be based upon a debtor's mere ability to pay, which is expressly prohibited by the legislative history." *In re Perlin*, 497 F.3d 364, 374 (3d Cir. 2007); *see also* Order at 4 (collecting cases).

What this case boils down to is a couple with an extremely large income and an even larger debt. The debt is not a result of the Debtors living beyond their means; the debt is principally the result of business-related loans. The bankruptcy schedules filed by the Debtors, (the accuracy of which is not challenged), and the testimony of the Debtors, support this view. Accordingly, the bankruptcy court correctly found that this is not the type of egregious case that warrants dismissal pursuant to 11 U.S.C. § 707. Were it so, the United States Trustee's Office surely would have filed such a motion, or moved to convert this case into a Chapter 13 case.

## VI. Conclusion

For the foregoing reasons, the bankruptcy court's Order denying First Capital's Motion to Dismiss, dated September 15, 2011, is **AFFIRMED**.


**SO ORDERED** this  14th  day of May 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Phillip Alan Martin
FULTZ MADDOX HOVIOUS & DICKENS, PLC
pmartin@fmhd.com

Michael Wayne McClain II
BALLINGER MCCLAIN, PLLC
mike@kentuckytrial.com